in this matter. I would like to begin with medical bills, which I believe I will spend most of my time on. By way of background, employees submitted his medical bills through his wife's group health insurance. These bills totaled a little over $165,000. However, after PPO discounts and write-offs and reductions, the bills came to approximately $52,000. The arbitrator, though, did award the medical bills of $165,000, the original amount that was owed, even though the group health insurance only had to pay a little over $52,000. How do you show what's reasonable and necessary in this practice before the commission? What are reasonable and necessary medical expenses? What's the typical way you do that? To show what's causally related to the accident in this matter? No, no, no, no, the amount. How do you show that? I'm asking reasonable and medical expenses. Reasonable and necessary medical expenses. For the different amounts that I just, I guess... Generally, let's discuss this, okay? The employer is responsible for paying those, am I correct? Let's assume causation, let's assume all that. Sure. Yes, that's correct, Your Honor. In practice, how do you do that? Basically, if it is causally related... Yeah, yeah, yeah, yeah. We pay the bills... How do you prove reasonable? How do you establish from an evidentiary standpoint that they are reasonable and necessary? What is the mechanism? You're on trial now. How do you prove that? Right. What do you do? I'm sorry, if I am... Yeah, I think maybe I'm just throwing you off, okay? Give me a little tutorial in the practice, okay? I'm asking, hey, I got these, I got to prove reasonable and necessary medical expenses, okay? Because I want to get that benefit for my client. So what do I do? I mean, how does somebody normally do that? What's the foundation for admitting these into evidence? I guess basically just establishing that he went to this treater on a certain date, showing the different treatment that he received on that date, for what injury he received that treatment for, and then submitting the bills into evidence of what the actual amount of the bills were. Oh, the actual amount of what the bills were. Okay. Is it the stated amount on the bills, or is it the amount paid? It's my argument today that it's the amount paid, Your Honor. Okay. What does the act require the employer to do? The act requires the employer to pay the bills that are reasonable and necessary, as we've discussed. And in this matter, the bills that were actually paid were only a little over $52,000. Basically, my entire argument here today is that if you were to, if this Honorable Court was to confirm the decision of the Commission, awarding $165,000 in medical bills, even though only $52,000 were paid, would result in a windfall and an unjust enrichment to the employee in this matter. That happens in every tort case, doesn't it? That happens in tort cases, Your Honor, but basically, I think the main question that we need to address today is whether the collateral source doctrine applies to workers' compensation law. Why shouldn't it? Employee's attorney has provided no case law that it does. He has simply provided case law, which is correct, that applies to tort cases in Illinois. I do not believe that it should apply to Illinois workers' compensation cases because it is a common law doctrine that is applied, and as we know, tort is a common law. The Illinois Workers' Compensation Act, though, is a remedial act that was created by statute. This act provides a fixed remedy for an employee to recover against his employer. The act does not allow an employee to sue in tort, or sue his employer, excuse me, in tort. Therefore, in Illinois workers' compensation cases, there is no tort feaser. It's a no-fault act, as we all know, and no negligence needs to be shown, therefore. And so when you say it's a fixed remedy, you're saying it's to make the worker whole, right? Economically whole? Economically whole for what he is liable for, correct. And in this matter, what I am arguing is that the employee in this case is liable for the just above $52,000 that was paid through his wife's group health insurance. It's my understanding that the wife's group health insurance will come after the employee for the amount that was paid, for the just over $52,000. Also, there was a little over $1,100 paid by employee out-of-pocket expenses, which I understand he should also recoup for. But I think that it should stop there. Employee was already given an award for permanency, that of 35% loss of use of the man as a whole. If we were to award an employee 35% loss of use of the man as a whole, on top of the approximately $111,000 in medical bills that he's not liable for, we're basically awarding him over 100% loss of use of the man as a whole. And I think this issue is important because it hasn't been addressed in workers' compensation law. I don't think the Act contemplated this benefit to be given to the employer, or excuse me, to the employee. The amount that could be given if this decision is confirmed, the, what could happen from this would be unbelievable. I think what employees would do would be something similar to what this employee did, was to say, we submit the medical bills through a spouse's health insurance to avoid any 8J credit, because as we know, 8J credit only deals with the employer's group health insurance. Therefore, they would derive or go around that avenue, and then they would be able to recoup the extra expenses that they're not liable for. How do you respond to the argument there's some case law that suggests that the doctrine has been applied, but there are other statutory causes of action in Illinois and other statutory causes. So how do you get around that, or how do you respond to that? Other statutory causes besides, or causes besides Illinois workers' compensation? Yes. Well, I believe that other statutory causes of action, it has applied. So how do you distinguish this Act from those other statutory causes of action? I believe that the Illinois Workers' Compensation Act is different. As we've stated before, there is no case law that is showing directly on point that it has applied to the Illinois Workers' Compensation Act. I understand that these are other statutory acts, but until we make a decision, hopefully here today, as to whether or not the collateral source doctrine does apply to the Illinois Workers' Compensation Act. Do plaintiffs in DRAM shop actions recover damages? I believe so, yes. Do they recover damages in wrongful death actions? I believe so, yes. Do they recover damages in workers' compensation actions? Damages, no. And therefore, since damages are not recovered in the Illinois Workers' Compensation Act, I think that's what can differentiate the Illinois Workers' Compensation Act to the other actions. Let me ask a question. How do we know the doctors won't end up in a position where they come after them for this difference? The medical providers took big discounts on the strength of the PPO relationship they had with the wife through her health insurance. If it ultimately ends up that it's not paid by her health insurance, that they're reimbursed by the workers' compensation insurer, how do we know through their PPO plan that that doesn't free them up to bill for the difference? Well, it's my understanding that the reductions and whatnot with the medical bills were thoroughly discussed with the doctors. They agreed on accepting the lower amount. And I believe it is case law that once they have accepted the lower amount as payment in full, that they can no longer come back against the patient. So the health insurance company can go to the ultimate paying party, get fully reimbursed, but the doctors still get stuck with the more than 50 percent discount? Well, it's my understanding that the doctors in this case did agree to the discounts to begin with. Therefore, I believe waiving their right to come back at a later time to recoup the remainder amount. Is there anything in the record that supports that either way? If we were to agree with you and say that the only thing that you're liable for is the $52,000 that was actually paid, you certainly wouldn't object to us also saying that you have to hold the claimant harmless for many additional claims that may be made against him for these health bills, would you? In this particular case, I don't think I would have objection because, like I said, I believe it is my understanding that they agreed to the reduction of bills and to the discounts. And as I stated, I believe that it is case law that once they do accept these reductions in payment and in full, that they no longer have the right to come back against the payee in this case for the extra monies owed to them of the original amount. And although it's not authoritative, certainly persuasive cases in other jurisdictions such as Tennessee and Missouri has differentiated tort law and workers' compensation law. And these are located in my brief. A Tennessee court has stated that to allow an injured worker to receive the full amount of medical bills instead of the amount actually owed would result in unauthorized extra benefits that are not contemplated by the workers' compensation statute in Tennessee. I think that is certainly applicable here that the writers of the statute did not contemplate this as being an extra benefit or a windfall to the employee. I guess if we take a step back and we think about what the employee actually owes and is liable for currently is the $52,000. To award him the $165,000, he pays the $52,000, and then he is sitting there with $111,000 that is owed to no one. I think that when you add this on top of the TTD award, on top of the PPD award, this certainly creates a windfall that the employee is not owed or is not due. It's not his right to have this extra windfall of $110,000 when he is only liable for just over $52,000. The employee is not going to get the $110,000. The award was for $165,000. Everything is taken out of it. Sure. But the windfall of it is that he is going to get these extra monies once everything is taken out of it that he is not liable to pay for anything else. He basically is getting the windfall, as I said before, and I know that seems to be the theme of my argument here. But any time you are receiving these benefits that you are not then liable for, it certainly is a windfall. The second issue that I would like to discuss is the accident and causal connection in this matter. As you have read through the statement of facts, the employee saw approximately five different doctors for his injuries. The first two doctors that he saw were Dr. Calero, which is his family doctor, and Dr. Lucan. Neither of these doctors provided a causal connection opinion either way. The employee then began treating with Dr. Shabley. Dr. Shabley did not provide a causal connection opinion until approximately 13 months after he began treating employee. He began treating employee in November 2005 and provided a causal connection opinion in January 2007. During this time, Dr. Shabley accepted the group health insurance through employee's wife. He made no indication whatsoever during any of these visits that this could be work-related or this could have been an aggravation or an acceleration until January 2007. Now, drawing your attention to that date in January 18th, 2007, it was actually the employee himself who brought this to the doctor's attention. The employee walked into the office, according to what it seems like in the notes, and asked Dr. Shabley, Doctor, do you think this could be work-related? It was only then at that point in time that Dr. Shabley did provide an opinion that it could be work-related. Now, while this is sufficient, Dr. Shabley then stated that he relied on the fact that he believed the petitioner had been working as a forklift driver for, quote, eight years, ten years, whatever period, something like that, end quote. It was, in fact, only true that the petitioner had been working for approximately seven months as a forklift driver for the plaintiff appellant in this matter. Therefore, I believe that Dr. Shabley's opinion shouldn't be given weight as compared to Dr. Lim's opinion and Dr. Bayless's opinion that stated that there was no relation to work in this matter. Did they specifically comment upon whether or not the claimant's work activities aggravated or accelerated his preexisting condition? Did they ever ask that? They did not. They did not. They did not state that. But Dr. Lim was a doctor that an employee was sent to by the plaintiff appellant in this matter. I understand that certainly doctors pursuant to Section 12 examinations sometimes aren't given the weight of treating doctors. But I direct this Court to look toward Dr. Bayless's conclusion that it was not work-related, as Dr. Bayless is an unbiased doctor in this matter. An employee was sent to him in order to treat for his carpal tunnel syndrome. Why would the commission have to believe him over the other doctor? I believe that since Dr. Shabley's opinion is resting on the fact that he believed an employee had been performing these repetitive movements for eight years, ten years, something like that. Why did Bayless say that he had been a forklift driver for quite a long time? Dr. Bayless knew that. There is nothing in the record that supports that Dr. Shabley knew that information. In his testimony he had been a forklift driver for quite a long period of time, regardless of who he was working for. Is that in the record he was? I mean, your own guy says he was a forklift driver for quite a long period of time. But the important person to look at here is Dr. Shabley. And in reviewing the records, there's no mention whatsoever that Dr. Shabley knew that petitioner or that employee was working as a forklift driver for this amount of time. He knew that employee had been working. But your argument only holds water if he wasn't a forklift driver for a long period of time, but only been a forklift driver for one year, in which case you'd say Shabley's opinion is based on a wrong set of facts. But if he was a forklift driver for a long period of time, regardless of who he worked for, Shabley's opinion isn't flawed. Well, I respectfully disagree. I believe that Dr. Shabley's opinion is flawed in the fact that it rests on his belief that it was 8 years or 10 years. Now, whether an employee had been working for 8 or 10 years as a forklift driver I don't think is the relevant issue here. I think it's the fact that Dr. Shabley provided his opinion on that belief, and it was an unfounded belief and an incorrect belief, at least what has been made available to him prior to giving his opinion. So without belaboring what you're saying, Shabley's opinion is in the record. It supports the claimant's position. You're pointing out other doctors that say it's not. You think Shabley's opinion is flawed and the Commission shouldn't have believed it. Ergo, it's against the manifest way of the evidence. Absolutely, Your Honor. Absolutely. I understand. And then from there, the final issues would be with TTD, PPD. I believe that those should be reversed. Finding that accident and causal connection should be reversed. Thank you. Counsel, please. May it please the Court. Counsel. Richard Alexi on behalf of Mr. Nowrat. It's interesting to note that the majority of counsel's argument deals with money. Money, the windfall, the conniving. Is that what you're interested in? And my answer is windfall has no place in this room. If it is a windfall, should it be in this room? No, it's not a windfall. Then why not? Because the sum of the money has nothing to do with the concept of windfall. This Court and the Supreme Court has dealt with the issue of windfalls in these kinds of cases. But not in Kemp. You can see that. Well, the Commission uses the collateral source rule all the time. We're called upon squarely to determine whether or not the collateral source rule should apply in Kemp cases. Right. And we start off by saying there's no case specifically on point yet. All right. Then let's follow the natural syllogism created by the statute. The legislature created a safe harbor for respondents. Respondents who determined that they are going to deny claims, that safe harbor is codified in Section 8J. Section 8J says if the man is fortunate, or woman, is fortunate enough to have group insurance paid for in whole or in part by the employer, and that entity pays the medical expenses, which ultimately attach to the claim under workers' compensation, the employer gets credit for that. They get credit. That's their safe harbor. However, counsel wants you to graft onto that as a legislative edict that any group carrier who comes in to rescue the claimant so that his medical treatment can go forward, they should get a benefit of that, because if the disparity between what is negotiated between this particular insurance company with this set of providers allows them to take some discounts, they should benefit, even though they put the petitioner in a position of distress. Why should the claimant get something for nothing? Your Honor, that's not what the issue here is. Why should the respondent who takes the position that we're going to send you to Bayless, Bayless says he has an on-the-job injury which has resulted in carpal tunnel, they ignore that admonition from their own doctor, never pay him a dime for workers' compensation benefits, don't pay for any medical treatment. Look at the bills. The bills include Bayless's bill. So if you're going to take the position as a respondent that you don't want windfalls to occur, then you better measure your risk analysis a little more calibrated and determine whether you're on a fool's mission by saying, no, we're not paying a dime. Look, the fact that there were discounts, the fact that there were payments, the fact that there were adjustments is not a relevant inquiry in the collateral source rule. The logic of the collateral source rule is this, the person or entity liable to pay some form of benefit, if they refuse, whether it's knowingly, whether it's with malice, whether it's with serendipity, cannot get the benefit of a stranger to the equation. And that's what happened here. That's what happened here. Are the payments on the collateral source, are these damages? These aren't damages for the claimant, are they? Isn't this a little different than the civil case? Your Honor, I think that the term damages and benefits and penalties and all this other stuff has gone through many, many iterations over the 35 years that I've appeared before this body. We have a case in Illinois where a justice of this body rewrote Section 10 to say that what the Section, or Section 8A rather, says, it doesn't say the employer must pay or shall pay for reasonable and necessary treatment, that opinion translated that language and it said that the respondent is required to pay the usual and customary charges. I've agonized over that language for many years because I don't see how the two come to meet. But that's not the issue here. The issue is what if the difference between the bills was $100? What if it was $1,000? At what point do you put the threshold that this man gets a windfall? And as Justice said, we have no evidence in this record that those doctors aren't going to come back to him for more money. There's no evidence in this record, as counsel says, my understanding is that the doctors sat down and there's no evidence in this record to support that kind of a statement. What we have here is a bare-bones effort to apply to you and say, you don't want this guy to get $100,000 from nothing. That's not what this is about. If they wanted to prevent that, they could have lived up to their liability under the statute. Bayless said he had an on-the-job injury. Bayless said it was carpal tunnel. Bayless was wrong. They sent him to Lucan. Lucan didn't say he didn't have an on-the-job injury. What he said was, I don't think the carpal tunnel is the main problem. We need to deal with the cervical problem. Finally, he goes to Shibley and Shibley says he doesn't have a carpal tunnel. He's got a disc in his neck. But we're standing here arguing about a run-of-the-mill repetitive trauma action because they didn't pay the bills. You have to stand up. And you don't get the benefit in Illinois of using somebody else's insurance for your insurance because you made a mistake. That's not the law. And where does that public policy come from? That policy comes from the fact that you have to be responsible for your actions, whether you're a corporation, whether you're a respondent, whether you're an individual. Again, there is no evidence in this record, Your Honor, of the consequences to the petitioner, to his spouse, to his spouse's company vis-a-vis these payments. That's not there. And if the law is going to change, if you adopt counsel's position, then what you're saying is we are going to expand 8J and we're going to say to the respondents of Illinois, if a carrier pays the bills, whoever that carrier is, however their premium is paid, no matter what source it may have, the employer gets credit for it because it's not fair to the employer because God knows this is a terrible loan. What's wrong with that? What's wrong with that? That's not the law, Judge. That's what's wrong with that. That's not the law. Just like employers now want to use people as if they're pawns. They want to move them from one volunteer position to another. You're going to have a case in a few months that addresses that question, whether that's accommodative employment to volunteer them at goodwill. This isn't a plantation theory. They don't own these guys. They're not indentured servants. And then counsel says, well, you know, shyly didn't comment on the causal connection until way down the line. Yeah, when litigation became necessary. They want the black letter specific language. They want the guy to go in there and say, doctor, I turn my head 47,000 times a day and I've been doing this for 9.5 years. And then they want the doctor to say in large agate type, this is a work-related injury within the reasonable degree of medical uncertainty, because, and when they get that from the chiropractor, it's not to malign any profession. Then the defense is, well, we know how this works. He and the petitioner are conspiring here. That's why the chiropractor's got such a thorough history. And I know you've heard that argument before. This decision is sound on the law. This decision follows the law. The only thing absent in this decision, quite candidly, there was no consideration for 19L penalties. It was denied under McMahon, even though the court has said they're mandatory and there's no 19K penalties. Even though their own doctor, Bayless, who counsel referred to several times, said he has an on-the-job injury that's resulted in carpal tunnel. Yet they paid nothing, zero. Any questions, Your Honor? Yeah, I have a question on this causation issue. Yeah. When the treating physician gave his deposition, did he have Bayless's records at his disposal before the deposition? Will the record reflect it one way or another? No, Your Honor, it does not. It does not. And Dr. Bayless, just to finish the answer, Your Honor, Bayless and the other doctors did not identify the distinct issue of whether there was an acceleration or an aggravation. I'm more concerned about the question about Bayless's progress note that says that the claimant had been a forklift driver for, quote, quite a long time. Right.  For sure, because the petitioner had talked to him about it. Yeah. And that's why when I asked him the question, I didn't say, you know, assume that he was employed for 15 years. The doctor said, well, yeah, because the guy was doing this seven, eight, nine years or something. And again, these records, you know, it would be wonderful if doctors were cognizant of what we discuss here in this forum so that they could document this. And now with electronic records, they're even getting less illuminative of the issues and less illuminative of the histories. And we're really going to have a tough time in years going forward. Thankfully, I'm now a Medicare recipient, so how much longer, I don't know. But thank you, Your Honor. Your final plea. I believe that the causal connection issue has been pretty much argued on the first, during my first argument. However, I would like to draw the Justice's attention to, and I apologize, I do not have the record number, but it is page 23 of Plaintiff's Exhibit 9, which is Dr. Shavely's deposition. And he stated that the only, that he didn't have any of Dr. Calero's records. He believed the only information he had regarding employee at that time was an EMG report and an MRI scan. But just to direct your attention there and to follow up on that issue. I'd like to go back to the medical benefits issue in this matter. Employee's attorney's argument, this is not a windfall issue. I think he's incorrect. I think this is a windfall issue to the fullest. Well, he's saying, and how do you respond to this, that when you look at the Act, in the four corners of the Act, that the respondent is to be responsible for usual, customary, reasonable, necessary medical expenses that are incurred by the claimant. Okay. Do you agree with that? Yes, I do, Your Honor. Okay. And that he does get credit when it's, is it when it's his group insurance, the respondent's group insurance, or is it insurance from any source? Under AJ, the credit is if it's through the employer's group health insurance. Okay. Now, his argument says that's all you look at. Okay? And then if you look under the facts of this case, the employer did not provide an insurance benefit under group or health and accident for the injuries, medical treatment of injuries incurred by their employee. Right? That's correct. Okay. Why is that argument not sound, that the only benefit, so to speak, that the respondent is entitled to, is that which he could have provided for himself? I believe To reduce his liability as economic cost. I believe what employee's argument is that under Section AJ, employers attempt to receive a credit. In this case, the employer is not attempting to receive a credit. They're attempting to, we are stating that the employer is liable for the medical bills that were actually paid. At no time in our brief do you see that we claim or that the employer claims an AJ credit in this matter. The point is that's the only credit provided in the act, is employer provided health insurance. The legislature could have said you get credit for any insurance carrier, but they didn't. So why should we legislate that? I don't believe that the original drafters of the statute contemplated this benefit being given to an injured worker in cases such as these. Why don't you believe that? Is there something in the legislative history? Do you have anything to support that? I do not at this time, Your Honor. But going back to employee's argument that employers should be responsible in The employer is not looking for a credit, is he? Of any kind. No, the employer is not looking for a credit of any kind as I stated before. I mean, the question is, clearly we know that the health insurance company is going to go after the employee to try and get the money from him. But the employer is not looking for a credit. Under HA, the employer actually wants a credit. Under HA, the employer does want a credit. In our case, we are not attempting to gain a credit. At no time, as I stated before, will you see HA listed in our brief. Why don't you say that? I mean, you know, a rose is a rose. I mean, is it not really, if you don't want to call it a literal credit, is there such a concept called a constructive credit? Well, I think the bottom line is that if there is a bill owed, that amount is paid. At no time in your any day course do you pay three times, four times as much as what the bill is, leave that money on the table and walk away for whatever purposes that is. Let's come back to my first question I asked of you, and that is, what is this when you litigate a case? What are the reasonable, necessary, or usual and customary, and how do you prove it out? As I stated before. What's charged or what's paid? I believe it is what's paid, and that's our contention today, is that it's what's paid. Going back to the phrase that I have used several times throughout this argument is that it is going to be a windfall. It's an unjust enrichment to employees. They will continue to submit these health insurance bills through their spouse's group health insurance because they now see a loophole or a way around the act. The other side of that is it lessens the reasons for an employer to have group health insurance. Absolutely, and I understand that argument there, but that is what penalties are for. The arbitrator did conclude that penalties were not, should not have been awarded in this matter, but that is the, that is what the risk that employers take is that if. Thank you, counsel, for your time. Thank you very much. Clerk will take the matter under advisory for this position.